**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-00084-MSK

**GINGER R. FREEMAN,**

      Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,**

      Defendant.[1]

**OPINION and ORDER**

      **THIS MATTER** comes before the Court on Plaintiff Ginger R. Freeman's appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Having considered the pleadings and the record, the Court

      **FINDS** and **CONCLUDES** that:

**I.    Jurisdiction**

      Ms. Freeman filed a claim for disability insurance benefits, asserting that her disability began on January 2, 2001. After her claim was initially denied, Ms. Freeman filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on May 12, 2011.

      After the hearing, the ALJ issued a decision with the following findings: (1) Ms. Freeman met the insured status requirements of the Social Security Act through June 30, 2009; (2) Ms.

---

[1] At the time Ms. Freeman filed her appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commissioner of Social Security, effective February 14, 2013.

Freeman had not engaged in substantial gainful activity since January 2, 2001; (3) Ms. Freeman had the following severe impairments: fibromyalgia, disorder of the back, right shoulder problems, and affective disorder; (4) none of these impairments, whether considered individually or together, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) Ms. Freeman had the Residual Functional Capacity ("RFC") to perform light work with a sit/stand option, no overhead work, and no complex tasks, which meant she could only perform jobs requiring a Specific Vocational Preparation (SVP) of level 3 or lower;[2] and (6) Ms. Freeman was not disabled because she was capable of performing her past relevant work as a telephone solicitor.

The Appeals Council denied Ms. Freeman's request for review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Ms. Freeman's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.    Issues Presented**

Ms. Freeman raises four challenges to the Commissioner's decision: (1) the ALJ failed to properly evaluate the opinions of both Ms. Freeman's treating physicians and her treating non-acceptable medical sources; (2) the ALJ's RFC finding is not supported by substantial evidence or applicable law because the ALJ did not properly consider all of Ms. Freeman's impairments and did not properly consider her subjective complaints, including pain and fatigue; (3) the ALJ did not properly consider Ms. Freeman's subjective complaints of pain and fatigue and did not

---

[2]  SVP is the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job. *Dictionary of Occupational Titles*, Appx. C.

properly assess her credibility; and (4) the ALJ's finding that Ms. Freeman can perform her past relevant work as a telephone solicitor is not supported by substantial evidence and applicable law. Having considered these issues and the record, the Court finds that reversal and remand is necessary due to several errors of law at Step 4. As evaluation of the medical opinions is intrinsic to the analysis of Ms. Freeman's subjective symptoms, the Court will address the first three issues together, followed by the fourth issue. Finally, because Ms. Freeman's challenges all relate to Step 4, the Court does not address Steps 1, 2, 3, and 5.

### III. Material Facts

Given the evidence and the issues raised, the material facts are as follows. Ms. Freeman was 27 years old on January 2, 2001 her alleged disability onset date. She had been in multiple car accidents ten years prior to her alleged onset date.

Prior to 2001, Ms. Freeman was employed by a company variously called Commnet Cellular, Airtouch, and Verizon as a cellular telephone sales person. She worked in a phone store, selling individual phones to customers. She shelved inventory, arranged floor displays, and sold cellular phones and accessories.

Ms. Freeman worked intermittently after 2001, but stopped working entirely in November, 2007 due to pain resulting from degenerative disc disease, fibromyalgia, arthritis, and face, back and shoulder injuries. According to her Work History Report, her past relevant employment was as a cellular telephone sales person.

Ms. Freeman testified at the hearing that she quit working due to chronic pain throughout her body, including neck, back, shoulder, arm, hand, hip, and leg pain. This pain flared up with activity, including simple tasks such as working on a computer or caring for her children.

Treatment for this pain included surgery, injections, massage, physical therapy, acupuncture, and medication. She was prescribed medication that included, Cymbalta, and Lorazepam.

Dr. Barkhurst was Ms. Freeman's primary care provider from 2000 to 2011. Her treatment notes indicate that Ms. Freeman often complained of musculoskeletal pain, particularly in 2008 and 2009. In December 2008, Ms. Freeman complained of pain all over. On examination, Dr. Barkhurst found general muscle tenderness with parspinal muscle spasms in her neck and mid-back, along with joint pain. Her assessment was symptoms of fibromyalgia and she recommended regular exercise and prescribed pain medication. These notes were similar to notes from examinations performed in January, February, April, May, June, and July 2009. During each of these examinations, Ms. Freeman reported diffuse body pain despite temporary relief from treatment. Physical examinations indicated muscle tenderness and pain in her neck, back, or shoulder. Treatment recommendations included medication, physical therapy, massage therapy, biofeedback, or further testing.

Dr. Barkhurst wrote a letter in April 2011 in which she opined that Ms. Freeman was "unable to function in any sustained manner that would require prolonged sitting, standing, key board operation or use of her arms." She also stated that "[Ms. Freeman] is severely limited in her ability to work in any meaningful capacity due to compromise of both her physical and mental health." According to Dr. Barkhurst, this was caused, in part, by constant, daily pain resulting from degenerative disc disease of the lower back and neck, a right shoulder supraspinatus tear, and fibromyalgia. Dr. Barkhurst noted that radiology studies indicated moderate scoliosis of Ms. Freeman's thoracic spine, degenerative disk disease, and "facet arthropathy throughout the lumbar spine with central disk protrusion at L5-S1 and right-sided

uncovertebral joint hypertrophy at C4-C5 which is causing moderate narrowing of the right neural foramen."[3]

Dr. Toner performed a consultative examination of Ms. Freeman in February 2009. Ms. Freeman reported neck injuries, mid-back pain that sometimes radiated to her low back, right should pain, and fibromyalgia. She reported that the pain was somewhat mitigated by wearing copper bracelets and magnets, but that she could stand for only 30 minutes, sit for two hours, walk one mile, and drive for two hours. Dr. Toner observed that she had a normal gait, a reduced cervical range of motion, full thoracic range of motion, full lumbar flexion and lateral extension and full range of motion of shoulders, elbows, writs, hips, knees and ankles. Dr. Toner found no evidence of injury or deformity in X-rays. He tested 20 trigger points and noted that Ms. Freeman did not complain of pain. He opined that there was no pathology to cause pain complained of by Ms. Freeman and that she could do all normal activities.

Dr. Isser-Sax, D.O. of Durango Orthopedics Spine Colorado also treated Ms. Freeman in 2009. Dr. Isser-Sax stated that Ms. Freeman's symptoms appeared consistent with a fibromyalgia-like syndrome, even though she did not have specific tender points on examination. In her treatment notes from April, May, and June of 2009, she noted Ms. Freeman complaints of pain during physical examination. During the April examination, Ms. Freeman told Dr. Isser-Sax that physical therapy, chiropractic therapy, and acupuncture provided only temporary pain relief. Dr. Isser-Sax's physical examination revealed pain in Ms. Freeman's neck and back. Dr. Isser-Sax recommended exercise, biofeedback, vitamin D, and pain medication in moderation. In May, Ms. Freeman told Dr. Isser-Sax that exercise and massage therapy helped her pain, but that

---

[3] Ms. Freeman underwent several MRI exams. MRI's of her spine from both 2005 and 2009 indicate mild degenerative disc disease at the L4-L5 and L5-S1 levels as well as moderate stenosis at the C4-C5 level. MRI's of Ms. Freeman's right shoulder from 2009 and 2010 indicate a small tear in the rotator cuff.

5

overall her pain was exacerbated by all activities. Dr. Isser-Sax treated Ms. Freeman with a series of injections into her spine, prescribed Relafen, Zanaflex, and recommended that Ms. Freeman exercise more. In June, Ms. Freeman had very similar complaints of pain, and Dr. Isser-Sax made similar examination findings and treatment recommendations.

Gary A. Scott, M.D., also of Durango Orthopedics Spine Colorado, first examined Plaintiff in June 24, 2009 for right shoulder pain. Ms. Freeman explained that she had this pain over 11-12 years and that usually was resolved by subacromial injections. Ms. Freeman ultimately underwent shoulder surgery and had an unremarkable recovery until she overused her shoulder and resulted in increased pain . In March 2011, after a lengthy discussion regarding her pain, she consented to an injection, which Dr. Scott noted resulted in "striking improvement in her pain".

As Ms. Freeman's treating psychologist, Dr. Vanderryn wrote a letter in April 2011 in which she stated that Ms. Freeman had regular pain in her shoulder, arms, and neck. She indicated that this pain was exacerbated by stress and consistent with fibromyalgia. She also stressed to Ms. Freeman that her pain was likely to be continuous and make it difficult to engage in "ongoing activities of a sustained and repetitive nature." Although Dr. Vanderryn treated Ms. Freeman from July 2009 to December 2009, the record does not contain any treatment records.

**IV.     Standard of Review**

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270, 105 Fed.Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

At Step 4 in the disability analysis, the ALJ is also required to assess a claimant's RFC based on all relevant evidence, medical or otherwise. 20 C.F.R § 404.1545.[4] As part of this evaluation, the ALJ must take into consideration all the claimant's symptoms, including subjective symptoms. § 404.1529(a). Subjective symptoms are those that cannot be objectively measured or documented. One example is pain, but there are many other symptoms which may be experienced by a claimant that no medical test can corroborate. By their nature, subjective symptoms are most often identified and described in the testimony or statements of the claimant or other witnesses.

In assessing subjective symptoms, the ALJ must consider statements of the claimant relative to objective medical evidence and other evidence in the record. § 404.1529(c)(4). If a claimant has a medically determinable impairment that could reasonably be expected to produce the identified symptoms, then the ALJ must evaluate the intensity, severity, frequency, and limiting effect of the symptoms on the claimant's ability to work. § 404.1529(c)(1); SSR 96-7p.

In the 10th Circuit, this analysis has three steps: 1) the ALJ must determine whether there is a symptom-producing impairment established by objective medical evidence; 2) if so, the ALJ must determine whether there is a "loose nexus" between the proven impairment and the claimant's subjective symptoms; and 3) if so, the ALJ must determine whether considering all

---

[4] Except as noted herein, all references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Hereafter, the Court will only cite the pertinent section, e.g. § 404.1545.

the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[5] The third step of the *Luna* analysis involves a holistic review of the record. ALJ must consider pertinent evidence including a claimant's history, medical signs, and laboratory findings, as well as statements from the claimant, medical or nonmedical sources, or other persons. § 404.1529(c)(1). In addition, § 404.1529(c)(3) instructs the ALJ to consider:

> 1) [t]he individual's daily activities; 2) [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) [f]actors that precipitate and aggravate the symptoms; 4) [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms…; and 7) [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Inherent in this review is whether and to what degree there are conflicts between the claimant's statements and the rest of the evidence. *Id.* Ultimately, the ALJ must make specific evidentiary findings with regard to the existence, severity, frequency, and effect of the subjective symptoms on the claimant's ability to work. § 404.1529(c)(4). This requires specific evidentiary findings supported by substantial evidence. *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988); *Diaz*, 898 F.2d at 777.

When evaluating medical opinions, a treating physician's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1517(c)(2). An ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d

---

[5] The ALJ need not follow a rote process of evaluation, but must specify the evidence considered and the weight given to it. *Qualls v. Apfel*, 206 F3d 1368, 1372 (10th Cir. 2000).

1211 (10th Cir. 2001). Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); § 404.1527.

If an opinion is not entitled to controlling weight, the ALJ must determine what weight to give the opinion and provide "good reasons, tied to the factors specified in [§ 404.1527(c)] for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011). The ALJ does not have to expressly reference all the factors outlined in § 404.1527(c), but the ALJ's reasoning must be clear to subsequent reviewers. *Watkins*, 350 F.3d at 1301. The ALJ must give good reasons in the decision for the weight assigned to a treating source's opinion. § 404.1527(c)(2). Although the ALJ is not required to discuss every piece of evidence, it must be clear that the ALJ considered all the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1010-11 (10th Cir. 1996). The ALJ must discuss not just the evidence supporting the decision, but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *Id.*

Finally, only medical opinions are given special consideration. § 404.1527(d)(3). Opinions on issues reserved for the Commissioner are not medical opinions, even if they come from a treating physician. § 404.1527(d). These include opinions that a claimant is disabled or unable to work. § 404.1527(d)(1).

## V.     Discussion

### A. Pain Analysis in the RFC determination

The Court begins with a general observation pertinent to the RFC determination.   The Decision contains a finding of severe impairments of fibromyalgia, disorder of the back, right shoulder problems and affective disorder, but the record and the argument on appeal focuses on Ms. Freeman's complaints of pain – persistent, fluctuating, but debilitating pain.

By definition, pain is a subjective symptom which is evaluated under the *Luna* analysis. As noted earlier, the first two steps in the Luna analysis focus on the correlation between objective medical evidence and provable impairments, on one hand and subjectively experienced symptoms on the other.

This Decision recites a detailed history of Ms. Freeman's medical records and treatment, with reference to various treatment notes.  It reflects that Ms. Freeman had a breast abscess drained in 2000, removal of her gallbladder in 2008 and multiple examinations, diagnoses and treatments to address intractable pain.  The Decision states that the ALJ gave Dr. Toner's 2009 consulting opinion that there was no observable physical cause for Ms. Freeman's pain "significant weight".  In contrast, the Decision gives by Ms. Freeman's treating physician that she experienced severe continuous pain "no significant weight" due to "lack of objective findings", yet inexplicably finds the fibromyalgia she diagnosed to be a severe impairment.  The Decision notes, but rejects opinions by massage therapists and an acupuncturist as non-medical sources who treated Ms. Freeman for pain, as well as opinions from Dr. Vanderryn, Ph.D. who treated Ms. Freeman with biofeedback and pain management training for six months in 2011.

The focus of Decision appears to confuse the analysis pertinent to the determination of physical impairments and the assessment of subjective symptoms.  The record clearly

demonstrates Ms. Freeman's repeated complaints and varying efforts to relieve pain. The Decision superficially cites to *Luna,* but it does not demonstrate the required analysis to evaluate the nature, intensity and severity of the pain she experiences. It does not address to whether there was a connection between Ms. Freeman's severe impairments of fibromyalgia, disorder of the back, right shoulder problems or affective disorder and the pain of which she complained. Without this analysis, the Court cannot be certain that the correct law was applied.

### B.    Dr. Barkhurst's Opinion

In the decision, the ALJ found that Dr. Barkhurst's opinion was entitled to "no significant weight" because Dr. Barkhurst's clinical records did not support her opinion. Ms. Freeman contends that the ALJ did not properly evaluate Dr. Barkhurst's opinion and the ALJ's finding was not supported by substantial evidence. The Commissioner responds that the ALJ properly evaluated Dr. Barkhurst's opinion because it was inconsistent with Dr. Barkhurst's treatment notes as well as other objective medical evidence. Additionally, the Commissioner asserts that some of Dr. Barkhurst's opinions addressed issues reserved for the Commissioner.

Dr. Barkhurst's April 2011 opinion was that due to chronic pain, Ms. Freeman was "unable to function in any sustained manner that would require prolonged sitting, standing, key board operation or use of her arms" and that "[Ms. Freeman] is severely limited in her ability to work in any meaningful capacity due to compromise of both her physical and mental health."[6] Dr. Barkhurst referred to Ms. Freeman's medical and treatment history as a basis for these opinions. She stated in her letter that Ms. Freeman had constant, daily pain resulting from degenerative disc disease of the lower back and neck, a right shoulder supraspinatus tear, and fibromyalgia. According to Dr. Barkhurst, radiology studies indicated moderate scoliosis of Ms.

---

[6] This Court does not regard this opinion as one regarding Ms. Freeman's ability to work, but instead one as to her limitations rather than a conclusory determination of disability.

11

Freeman's thoracic spine, degenerative disc disease, and "facet arthropathy throughout the lumbar spine with central disk protrusion at L5-S1 and right-sided uncovertebral joint hypertrophy at C4-C5 which is causing moderate narrowing of the right neural foramen."

A treating physician's opinion is presumptively given controlling weight.  But here, it was accorded "no significant weight" due to lack of support in Dr. Barkhurst's clinical records. Such finding is both legally insufficient and not supported by the record.

First, the Court notes that the ALJ must review the entire medical record in accordance with § 404.1527(c)(2) and SSR 96-2p.  Assessment of Dr. Barkhurst's opinion requires review and discussion of all other medical evidence in the record.  The Decision does not reflect consideration of the entirety of the medical evidence in the record nor does it point out inconsistencies between Dr. Barkhurst's opinion and her clinical records.  Thus, the decision's explication is inadequate.

Second, Dr. Barkhurst's opinion has several components.  Fundamentally, it ties Ms. Freeman's persistent pain, rather than to a physical impairment.  Thus, it has two components – 1) that Ms. Freeman has experienced pain linked to objectively recognized physical conditions; and, 2) the pain is so severe and pervasive that it impairs Ms. Freeman's ability to work. These components are ordinarily considered in conjunction with an analysis of Ms. Freeman's subjective pain symptoms.

Dr. Barkhurst's records reflect both conditions that presumably caused Ms. Freeman pain and her persistent pain complaints.  In addition, there are a multitude of other medical records showing her complaints of pain and associated medical conditions.  The record reflects a diagnosis of fibromyalgia by Dr. Isser-Sax, a disorder of the back, and a right shoulder injury. MRI's of Ms. Freeman's spine from 2005 and 2009 indicate mild degenerative disk disease at

the L4-L5 and L5-S1 levels and stenosis at the C4-C5 level. MRI's of Ms. Freeman's right shoulder in 2009 and 2010 indicate a small tear in the rotator cuff. In February 2009, Dr. Barkhurst reported that Ms. Freeman had tenderness along her neck, lumbar spine, and trapezius muscles. Dr. Isser-Sax noted in April, May, and June of 2009 that Ms. Freeman reported pain. Presumably, had there been no complaints of pain Dr. Barkhurst would not have recommended massage therapy, physical therapy, and increased exercise, and Dr. Isser-Sax would not have recommended greater exercise. In this case, the record contains numerous examples of Ms. Freeman's efforts to relieve her pain through treatment, medication, and reduction of daily activities. Ms. Freeman pursued a variety of traditional and alternative treatment, including surgery, physical therapy, exercise, massage therapy, and acupuncture. She attempted visualization techniques and biofeedback therapy in an effort to cope with pain. She greatly limited her daily activities. Additionally, she continued to take pain and sleep medication, including Cymbalta, Seroquel, and Lorazepam. Thus to the extent that Dr. Barkhurst opined that Ms. Freeman suffered from pain, the record supports her opinion.

Dr. Barkhurst's statement that persistent pain prevented Ms. Freeman from "functioning in any sustained manner that would require prolonged sitting, standing, key board operation or use of her arms" is a second component of her opinion. With regard to this statement, the Court agrees the ALJ that there is little in the treatment records to demonstrate the effect of Ms. Freeman's pain because it was subjectively experienced. Such assessment is integrally tied to the *Luna* analysis, which was deficient.

### A. Dr. Vanderryn

The ALJ also gave Dr. Vanderryn's opinion "no significant" weight because it was unsupported and no supporting documentation was provided with the opinion. Ms. Freeman

13

argues that this finding was incorrect because the ALJ did not perform the required analysis in evaluating Dr. Vanderryn's opinion and should have recontacted Dr. Vanderryn to supplement the record. The Commissioner argues that Dr. Vanderryn's opinion was entitled to no significant weight because she treated Ms. Freeman after her date last insured and did not actually offer an opinion regarding Ms. Freeman's functional limitations.[7]

The ALJ's finding that Dr. Vanderryn's opinion was entitled to no significant weight is problematic. A medical provider does not have to justify an opinion. Although the degree to which the physician's opinion is supported by relevant evidence is one factor to consider when weighing a medical opinion, a lack of documentation in the record should have prompted the ALJ to re-contact Dr. Vanderryn. As this case was adjudicated in 2011, § 404.1512(e) required the ALJ to seek additional evidence or clarification from a medical source if there was insufficient support for the source's conclusions about Ms. Freeman mental limitations, the severity of those limitations, or the effect of those limitations on her ability to work. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).[8] The failure to do so was error.

---

[7] As the ALJ did not mention the timing of Dr. Vanderryn's treatment or opinion in relation to Ms. Freeman's date last insured, the Court will not consider this *post hoc* argument asserted by the Commissioner. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (ALJ's decision should be evaluated solely on the reasons stated in the decision).

[8] The Court notes that § 404.1512 was changed in 2012, eliminating this requirement. *See Borgsmiller v. Astrue*, 499 Fed.Appx. 812, 815 (10th Cir. 2012). According to the Commissioner, this rule was changed to give an ALJ more "flexibility in determining how best to obtain information." How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10651-01 (Feb. 23, 2012) (to be codified at 20 C.F.R. § 404.1512). Although the Commissioner eliminated this specific rule, he indicated that "there are times when we would still expect adjudicators to re-contact a person's medical source first; that is, when re-contact is the most effective and efficient way to obtain the information needed to resolve an inconsistency or insufficiency in the evidence received from that source." *Id.*

### B. Past Relevant Work

Although reversal is required on other grounds, the Court addresses Ms. Freeman's final challenge in the interest of clarity. At Step 4, the ALJ found that Ms. Freeman was able to perform her past relevant work as a telephone solicitor and was, therefore, not disabled. She based this finding on the vocational expert's testimony at the hearing. Ms. Freeman points out that she was never employed as a telephone solicitor, but rather worked in a cellular phone store selling cellular phones and equipment. As a result, according to Ms. Freeman, this finding is not supported by substantial evidence.

Based on the record, Ms. Freeman never worked as a telephone solicitor. According to her Work History Report, Ms. Freeman was employed by a company variously called Commnet Cellular, Airtouch, and Verizon1996 to 2000 in cellular phone sales. She shelved inventory, arranged floor displays, and sold cellular phones and accessories. Given the job title and description, it is clear that Ms. Freeman worked in a store, selling individual phones to customers. In contrast, a telephone solicitor:

> Solicits orders for merchandise or services over telephone. Calls prospective customers to explain type of service or merchandise offered. Quotes prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filing. Keys data from order card into computer, using keyboard. May develop lists of prospects from city and telephone directories. May type report on sales activities. May contact [driver] to arrange delivery of merchandise."

*Dictionary of Occupational Titles*, #299.357-014. Clearly these jobs are not the same. As such, the vocational expert's testimony that Ms. Freeman could perform her past relevant work is incorrect.

15


For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED**, and the case is **REMANDED.**

DATED this 12th day of August, 2013

BY THE COURT:

Marcia S. Krieger
United States District Judge